```
                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF MICHIGAN
                         SOUTHERN DIVISION
```

_____

UNITED STATES OF AMERICA,

        Plaintiff,

   v.                                        File No. 1:03-CR-203

ERNESTO McKINNEY,

        Defendant.
_____/

<u>Supervised Release Violation Hearing</u>

Before

          THE HONORABLE GORDON J. QUIST
            United States District Judge
               September 7, 2017

<u>APPEARANCES</u>

| | |
|---|---|
| DAVIN REUST | RICHARD E. ZAMBON |
| Assistant U.S. Attorney | 202 Waters Bldg. |
| P.O. Box 208 | 161 Ottawa Ave., NW |
| Grand Rapids, MI 49501 | Grand Rapids, MI 49503 |
| Attorney for Plaintiff | Attorney for Defendant |

Kevin W. Gaugier, CSR-3065
U.S. District Court Reporter

```
 1                                      Grand Rapids, Michigan
 2                                      September 7, 2017
 3                                      3:12 p.m.
 4                                -  -  -
 5
 6                          P R O C E E D I N G S
 7
 8         THE COURT:  Good afternoon.  Please be seated.
 9         This is the case of United States of America against
10   Ernesto McKinney, docket number 1:03-CR-203-04, time set for a
11   hearing on whether or not Mr. McKinney violated terms and
12   conditions of his supervised release.  Can I have the
13   appearance of counsel, please?
14         MR. REUST:  Good afternoon, Your Honor.  Davin Reust
15   for the United States, and seated next to me at counsel table
16   is Probation Officer VanderVelde.
17         THE COURT:  Thank you.
18         MR. ZAMBON:  Good afternoon, Your Honor.  Richard
19   Zambon appearing on behalf of Defendant Ernesto McKinney who
20   is in court.
21         THE COURT:  Okay.  Thank you.  Has each party
22   received a copy of the alleged violations, Mr. Reust?
23         MR. REUST:  Yes, Your Honor.
24         MR. ZAMBON:  Yes, Your Honor.
25         THE COURT:  You can remain seated for this, Mr.
```

```
 1   Zambon.  Have you gone over them with your client, Mr. Zambon?
 2             MR. ZAMBON:  I have, Your Honor.
 3             THE COURT:  Is that correct, Mr. McKinney?
 4             DEFENDANT McKINNEY:  Yes, Your Honor.
 5             THE COURT:  Okay.  What I'm going to do, Mr.
 6   McKinney, is read the alleged violations to you and ask you
 7   how you're going to plead to those.  The government must
 8   establish the alleged violations by a preponderance of the
 9   evidence.  If the government fails to do this, you will be
10   adjudicated not guilty of the allegations.
11             You have the right to cross-examine witnesses
12   brought by the government.  You have the right to use your
13   retained counsel or court-appointed counsel.
14             Are you court-appointed?
15             MR. ZAMBON:  I am, Your Honor.
16             THE COURT:  Okay.  Thank you, Mr. Zambon.
17             You'll be given the opportunity to speak if you are
18   found guilty.  You'll be given the opportunity to speak in
19   mitigation before any punishment is determined by me.  Do you
20   understand all these rights, sir?
21             DEFENDANT McKINNEY:  Yes, Your Honor.
22             THE COURT:  Okay.  I will now read the alleged
23   violations to you, sir.  I want to make sure I've got the
24   right ones here.  Yes, I do, because we've had two of these
25   hearings in a short period of time.
```

```
 1              Alleged violation number one is of the following
 2   mandatory condition:  Defendant shall not commit another
 3   federal, state, or local crime.  It's alleged that on or about
 4   July 27, 2017, through August 8, 2017, Mr. McKinney possessed
 5   and used cocaine.  Possession of cocaine less than 25 grams is
 6   a violation of Michigan law, a felony, and this is a
 7   subsequent -- second or subsequent offense.  The penalty is
 8   subject to an enhancement for an additional two years, so it
 9   could be up to six years in prison.  Do you understand that
10   charge, sir?
11              DEFENDANT McKINNEY:  Yes, Your Honor.
12              THE COURT:  And how do you plead, sir, guilty or not
13   guilty?
14              DEFENDANT McKINNEY:  Guilty.
15              THE COURT:  Guilty, okay.
16              Violation number two, standard condition number
17   seven.  Defendant shall refrain from use of alcohol and shall
18   not possess, purchase, possess, use, distribute or administer
19   any controlled substance or any paraphernalia related to any
20   controlled substances except as prescribed by a physician.
21   It's alleged that on or about July 27, 2017, through August 8,
22   2017, you used and possessed cocaine.  Do you understand that
23   charge?
24              DEFENDANT McKINNEY:  Yes, Your Honor.
25              THE COURT:  And how do you plead, sir, guilty or not
```

```
 1   guilty?
 2              DEFENDANT McKINNEY:  Guilty.
 3              THE COURT:  All right.  Did you take a look at the
 4   supporting evidence on that and go over that with him, Mr.
 5   Zambon?
 6              MR. ZAMBON:  I did, Your Honor.
 7              THE COURT:  Okay.  Mr. McKinney, do you agree that
 8   it's substantively correct, what it says there under
 9   supporting evidence and information?
10              DEFENDANT McKINNEY:  Yes, Your Honor.
11              THE COURT:  Okay.  Then you're adjudicated guilty of
12   those violations.  That's a Grade B violation for violation
13   number one.  Possession/use of cocaine is a Grade C
14   violation.  The most serious grade is B.
15              He has a criminal history category of IV.  That
16   carries a penalty of 12 to 18 months under the policy
17   guidelines, and they're only policy statements.  They never
18   were the so-called mandatory guidelines.  Even they weren't
19   really mandatory, but they're called that.
20              The recommendation to me, however, is a sentence
21   longer than that, a sentence of 24 months, and that's where we
22   are.  And the rationale I think you have, I mean, he was just
23   here in July, for one thing, and hope for the best and got the
24   worst.  Anyway, why don't we stand up there for allocution.  I
25   read his letter.
```

```
 1                MR. ZAMBON:  Thank you, Your Honor.
 2                If it please the Court, I was first assigned to
 3   represent Mr. McKinney when he applied for a sentence
 4   reduction back in about 2012, and I remember filing 63
 5   certificates of accomplishment that Ernesto had obtained while
 6   in prison, so he kept very busy when he was sentenced
 7   originally.  He I understand had very little problems in
 8   prison.  He was, you know, pretty much a model prisoner.
 9                He applied for the RDAP program but was unable to
10   take that program because eventually this Court did reduce his
11   sentence, and due to timing issues he was unable to take the
12   500-hour program, which I think would have been very
13   beneficial to him.  He did take a 40-hour drug treatment
14   program while in prison.  Obviously not enough help for him.
15                When Ernesto got out of prison, he was sentenced to
16   halfway house, and within two weeks he had obtained a job
17   there at the halfway -- while still in the halfway house, and
18   then he was released from the halfway house after I think it
19   was 30 days.  So he was doing very well there.  He was
20   steadily employed all the time he's been on supervised
21   release.
22                My understanding is his jobs have always been better
23   and better.  He started off at McDonald's as a general laborer
24   and was there for six to eight months, got a job at Notions in
25   Grand Rapids, which is a seasonal distributor for Anson
```

```
 1    Packaging.  He then went to Dennen Steel and worked there, got
 2    a job as a janitor, ended up at Label Tape in Caledonia.  He
 3    was able to get those jobs which were out of the area for
 4    him -- Dennen Steel is a bit of a drive, Caledonia is a bit of
 5    a drive -- but did he that because he had a driver's license,
 6    and he started making some pretty good choices.
 7              He bought a car, got an apartment.  His girlfriend
 8    had a child, was born I think three months premature and was
 9    in neonatal care for a substantial period of time.  About that
10    time is when he started slipping, started using, and was in
11    complete denial as the Court sees from the report and from his
12    conferences with you.  I think he's been before you before, as
13    you said, in July.  He was in denial as to his use and his
14    dependence on cocaine.
15              When I met with him we discussed all those issues.
16    He realizes he has this huge problem.  If you call it the
17    monkey on his back, it's tremendously large.  It's
18    gorilla-sized, obviously.  He wishes that he had availed
19    himself of the help that was offered him through the Probation
20    Department and this Court gave him the opportunity, and as you
21    can see from his letter, he is serious about the fact that he
22    needs help.  He acknowledges and he asks the Court to give him
23    a chance, put him back into some kind of supervised release,
24    you know, after some short jail sentence in the halfway house
25    so he can learn how to deal with the issues in his life.
```

```
 1   Thank you, Your Honor.
 2              THE COURT:  Thank you.
 3              Mr. McKinney, anything you'd like to say?
 4              DEFENDANT McKINNEY:  Yeah.  I just want to apologize
 5   to the courts and to Amy.  I apologized to her like a week
 6   before I got locked up or whatever, you know, for what I was
 7   doing, and I just want another chance to, you know, try to get
 8   some type of help.
 9              THE COURT:  Well, there's an old saying, isn't
10   there, Mr. McKinney?  One time -- what is it?  Fooled once,
11   sorry, you know, for me.  Fooled twice, really bad for me.
12   And so here we have it.  Just a couple of months ago you were
13   here and given a break.  Yeah, and -- well, you raised your
14   hand, so --
15              DEFENDANT McKINNEY:  No, go ahead, and I haven't
16   used.  I haven't did nothing since then, since I left the
17   court.
18              THE COURT:  Okay.  I thought that this use came
19   afterwards.
20              DEFENDANT McKINNEY:  It did, but I was already
21   dirty when they put the patch on me.
22              THE COURT:  So you're saying you didn't use, but it
23   came back dirty anyway?  It lasts about seven days.
24              DEFENDANT McKINNEY:  Right.  That's what I told my
25   PO.  I said -- I asked Amy, I said, Man, just give me one more
```

```
 1   week because I know my system will be clean.
 2            THE COURT:  Ms. VanderVelde?
 3            PROBATION OFFICER VANDERVELDE:  I'm sorry, Your
 4   Honor?
 5            THE COURT:  Did he use after the last time we were
 6   here together?
 7            PROBATION OFFICER VANDERVELDE:  Yes, Your Honor.
 8            THE COURT:  And what was -- let me just check these
 9   dates again.  We had this hearing --
10            DEFENDANT McKINNEY:  July 27th.
11            THE COURT:  All right.  Our hearing was -- I don't
12   have it here.
13            PROBATION OFFICER VANDERVELDE:  It was July 27, Your
14   Honor.
15            THE COURT:  The hearing was July 27?
16            PROBATION OFFICER VANDERVELDE:  Correct, Your Honor.
17            THE COURT:  And then when did he use, July 27?
18            PROBATION OFFICER VANDERVELDE:  There was a patch on
19   from July 27 through August 3 that was positive for cocaine
20   and then another patch on August 7.  Sorry, that was a drug
21   use.  That was a UA drug test, so a urinalysis.  That was
22   positive for cocaine, and then we had another sweat patch on
23   August 3 through August 8 that was positive for cocaine, and
24   cocaine use only stays in your system approximately 36 hours,
25   Your Honor.
```

```
 1                THE COURT:  Yeah, but the metabolite stays there a
 2    little bit longer.
 3                PROBATION OFFICER VANDERVELDE:  There's a cutoff,
 4    Your Honor, for the patches.  There was two patches and one
 5    urine, Your Honor.
 6                THE COURT:  And one urine.  They all tested
 7    positive?
 8                PROBATION OFFICER VANDERVELDE:  Correct.
 9                THE COURT:  Okay.  That would have caught it, then.
10    Okay.  Anything from the government?  Oh, I'm sorry, Mr.
11    McKinney.  Did you want to say anything?
12                DEFENDANT McKINNEY:  No, I've said it all.
13                THE COURT:  Okay.  You may be seated.  Mr. Reust?
14                MR. REUST:  Very briefly, Your Honor.
15                The Court's obviously much more familiar with this
16    case than I am and knows that Mr. McKinney had two positive
17    sweat patches which resulted in a July 27 hearing where the
18    Court was lenient with Mr. McKinney, and instead of revoking
19    his supervised release, simply ordered that he continue to
20    wear sweat patches.  So he put one on that day on August 3,
21    tested positive.  On August 7 Mr. McKinney took a urinalysis
22    test and that was also positive, and then he wore another
23    sweat patch from August 3 to August 8 which was positive, and
24    now as high as August 14th he failed to report to have a new
25    patch put on.
```

```
 1              Your Honor, I looked back through Mr. McKinney's
 2   initial PSR, and what he said there gave me concern for the
 3   violation that he's here for today.  In the PSR in
 4   Paragraph --
 5              THE COURT:  Hold on a minute.  I have it right
 6   here.  What paragraph are you referring to?
 7              MR. REUST:  263.
 8              THE COURT:  263.  Do you have that, Mr. Zambon?
 9              MR. ZAMBON:  I do not have that with me.  I have
10   reviewed the report in the past.  If I could take a quick
11   glance.
12              MR. REUST:  I was just going to give --
13              THE COURT:  I've got it here now.
14              MR. REUST:  -- a brief summary.  In effect, Mr.
15   McKinney stated that he began selling drugs to finance his own
16   drug habit, and obviously here he's saying he slipped and
17   began using drugs, so there's clearly a concern here that that
18   may slip further if Mr. McKinney were to continue to use
19   narcotics.  So the government's position is in line with the
20   Probation Department's position in requesting the 24 months of
21   incarceration for Mr. McKinney.
22              THE COURT:  All right.  Well, I think the
23   recommendation by the Probation Department is right on.  It's
24   a little bit above the policy guidelines, but considering all
25   the facts and circumstances of the case, especially the fact
```

```
 1   that he was given the opportunity before and he wasn't
 2   forthcoming.  I was told until today that he was going to
 3   object to everything here, which is his right, and I don't
 4   hold that against him except it goes to really acceptance of
 5   responsibility for his acts.
 6           MR. ZAMBON:  Your Honor, if I may address that?
 7           THE COURT:  Yeah.
 8           MR. ZAMBON:  I advised the Court overnight in an
 9   email that we would not be contesting.
10           THE COURT:  I didn't say that.  I heard about it
11   today.  I heard it today for the first time.
12           MR. ZAMBON:  When we were exchanging emails back and
13   forth, I --
14           THE COURT:  She's nodding.  I didn't see it.
15           MR. ZAMBON:  As soon as I met with Mr. McKinney up
16   at the jail after the initial appearance, he told me he wanted
17   to plead guilty and I let the Court know.
18           THE COURT:  Okay.  Well, I'm sorry, then.  I'm
19   wrong.
20           MR. ZAMBON:  Thank you, Your Honor.
21           THE COURT:  All right.  But he was convicted of
22   conspiracy to possess with intent to distribute five kilograms
23   or more of cocaine base, also known as crack cocaine.  I was
24   just given a -- I probably was given it and I never saw it.
25   Here it is, 8/22.  "I spoke with Mr. McKinney yesterday and he
```

```
 1   does not wish to contest."  Okay.  First time I've seen it.
 2           Anyway, he possessed a firearm as one of his drug
 3   trafficking tools, a sawed-off shotgun that can loaded with
 4   buckshot.  At the time of his original sentence he had an
 5   offense level 37 and criminal history level of IV at that
 6   time, used Ecstasy and other drugs.  In other words, he had a
 7   big drug problem.
 8           His sentencing guideline range was 292 to 365
 9   months.  He was sentenced to 292 months, but the sentence was
10   lowered to 172 months pursuant to 18 United States Code
11   Section 3582(c).  The severe drug problems are important
12   because drug users also become drug dealers and Mr. McKinney
13   was a drug dealer, so he's back with the same crowd he was
14   before.  In fact, he was convicted in this court and other
15   courts of drug dealing.
16           He tested positive for illegal use that was
17   sanctioned by my sentencing him to five months in the
18   Residential Reentry Center for five months.  He was required
19   to use a sweat patch, and like I said, here we are again.
20           Also, he was in the company of a guy named Marcus
21   Palmer, another felon and a state parolee, when he, Mr.
22   McKinney, was stopped by the Grand Rapids Police Department.
23   The police said that they smelled marijuana odor emitting from
24   his person.  Mr. McKinney denied knowing Mr. Palmer was a
25   convicted felon.  I tend to doubt that.  People know at least
```

```
 1   usually that much about someone else.  He knew Mr. Palmer well
 2   enough to get into a car with Mr. Palmer and Mr. Palmer let
 3   him do so.  Doesn't really make any difference in sentencing.
 4   I just mention that because it gives me some concern, but I'm
 5   giving him the benefit of the doubt on that.
 6             He also -- he took responsibility for this, but like
 7   I said before, he was given the opportunity before.  The
 8   probation officer recommends I sentence Mr. McKinney above the
 9   guideline policy range.  In my judgment he doesn't learn his
10   lessons.  In my judgment he doesn't take responsibility for
11   his acts, and it can lead to trouble not only for him, but
12   also for the community to whom these products are sold.
13             Therefore, the sentence will be the 24 months
14   suggested.  I think that was it.  Okay.  He'll have three
15   years of supervised release to follow.  This is subject to any
16   final objection, by the way.  Three years of supervised
17   release to follow, and during that he will participate in a
18   program of testing and treatment for substance abuse as
19   directed by the probation officer and follow the rules as
20   directed by the probation officer, pay at least a portion of
21   the costs according to his ability, must not use/possess any
22   alcoholic beverage and not frequent any establishment whose
23   primary purpose is the sale or serving of alcohol.  He must
24   reside at the Residential Reentry Center as designated by the
25   Bureau of Prisons for a period of six months and while at the
```

```
 1    Center abide by all rules and regulations of the program and
 2    shall receive work release at the direction of the probation
 3    officer.
 4              Mr. McKinney, you have the right to appeal your
 5    sentence.  You must file a notice of intention to appeal if
 6    you want to appeal within 14 days of today.  You tell Mr.
 7    Zambon you want to file that notice and you tell him as soon
 8    as you can because it takes him some time to prepare it and
 9    get it over here.
10              Other than that, Mr. Reust, anything from the
11    government?
12              MR. REUST:  No, Your Honor, thank you.
13              THE COURT:  Mr. Zambon?
14              MR. ZAMBON:  No, thank you, Your Honor.
15              THE COURT:  All right.  We're adjourned.  Thank
16    you.
17              (Proceedings concluded at 3:28 p.m.)
18
19
20
21
22
23
24
25
```

CERTIFICATE OF REPORTER

       I, Kevin W. Gaugier, Official Court Reporter for the United States District Court for the Western District of Michigan, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a true and correct transcript of the proceedings had in the within-entitled and numbered cause on the date hereinbefore set forth.

       I do further certify that the foregoing transcript was prepared by me.

/s/  Kevin W. Gaugier

Kevin W. Gaugier, CSR-3065
U.S. District Court Reporter
110 Michigan N.W.
622 Federal Building
Grand Rapids, MI 49503